Magomed Esendirov, Esq. (State Bar No. 363301)
esendirov@musaev.com
MUSAEV & ASSOCIATES, PC
409 N Camden Dr., Suite 108
Beverly Hills, California 90210
Telephone: (424) 599-6556

Attorneys for Plaintiff
WEBBER FILMS LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA — WESTERN DIVISION**

| | |
|---|---|
| WEBBER FILMS LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>IRIS INDIE INTERNATIONAL, LLC, a Florida limited liability company, also known as IRIS INDIE GLOBAL LLC; and DOES 1–10, inclusive,<br><br>Defendants. | **Case No. 2:26-cv-_____**<br><br>**COMPLAINT FOR:**<br>(1)  COPYRIGHT INFRINGEMENT (17 U.S.C. § 501);<br>(2)  CONTRIBUTORY COPYRIGHT INFRINGEMENT;<br>(3)  BREACH OF ORAL CONTRACT;<br>(4)  PROMISSORY ESTOPPEL;<br>(5)  INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS;<br>(6)  FRAUD — INTENTIONAL MISREPRESENTATION;<br>(7)  DECLARATORY RELIEF (28 U.S.C. §§ 2201, 2202); AND<br>(8)  ACCOUNTING<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Webber Films LLC ("Webber Films" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Defendant Iris Indie International, LLC, also known as Iris Indie Global LLC ("Iris Indie" or "Defendant"), and DOES 1 through 10, inclusive, alleges as follows:

**JURISDICTION AND VENUE**

1.  This is a civil action arising under the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.* This Court has original and exclusive subject-matter jurisdiction over

1
COMPLAINT

Plaintiff's copyright claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over Plaintiff's related state-law claims pursuant to 28 U.S.C. § 1367(a), because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

2. This Court has personal jurisdiction over Defendant because Defendant purposefully transacts substantial and continuous business within this District, including through its distribution division, which at all relevant times operated in and from Redondo Beach, California; because Defendant holds out as its business address 1201 N. Catalina Avenue #526, Redondo Beach, California 90277; and because the acts and omissions giving rise to this action were committed by Defendant in substantial part within this District and were purposefully directed at Plaintiff, a resident of this District.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1400(a), because Defendant or its agent resides or may be found in this District, and pursuant to 28 U.S.C. § 1391(b), because Defendant resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

4. Plaintiff Webber Films LLC is a limited liability company organized and existing under the laws of the State of California, with its principal place of business at 5482 Wilshire Boulevard #369, Los Angeles, California 90036. Webber Films is a motion picture production company founded and operated by producer and director Josh Webber.

5. Defendant Iris Indie International, LLC, which also holds itself out and transacts business under the name Iris Indie Global LLC, is a limited liability company organized under the laws of the State of Florida (Florida Document No. L20000127948), formed on May 15, 2020. Defendant identified itself as "Iris Indie

International LLC" in the December 16, 2024 sales agency agreement with GVN alleged below, and its own published materials identify it by both names. According to the records of the Florida Secretary of State, Defendant's current principal address is 1902 W. Friendly Avenue, Greensboro, North Carolina 27403, designated on October 13, 2025; at all times relevant to this action, however, Defendant's distribution division operated in and from this District, from Redondo Beach, California, through Milena Rimassa ("Rimassa"), an authorized member of Defendant and its Partner and President of Distribution, and Defendant held out as its business address 1201 N. Catalina Avenue #526, Redondo Beach, California 90277, which on information and belief is a postal box. On information and belief, Defendant is not registered with the California Secretary of State to transact intrastate business in California, notwithstanding its continuous and systematic business in and from California. Florida Secretary of State records further reflect that Defendant lapsed into administrative dissolution and was reinstated effective October 13, 2025. At all relevant times, Defendant acted through Rimassa and its delivery and operations personnel, including Andrew Shearer.

6. The true names and capacities of the defendants sued herein as DOES 1 through 10, inclusive, are unknown to Plaintiff, which therefore sues those defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. On information and belief, each of the fictitiously named defendants is responsible in some manner for the occurrences alleged herein.

7. On information and belief, at all relevant times each Defendant was the agent, employee, partner, joint venturer, co-conspirator, or alter ego of each of the remaining Defendants, and in doing the things alleged herein was acting within the course and scope of such relationship and with the knowledge, consent, authorization, or ratification of the remaining Defendants.

3
COMPLAINT

**FACTUAL ALLEGATIONS**

**A. The Work and Plaintiff's Registered Copyright**

8. Plaintiff is the producer and owner of the motion picture *LOVE ME DEAD* (the "Work"), a feature-length psychological thriller directed by Josh Webber and starring Dove Cameron and RJ Mitte.

9. The Work was registered with the United States Copyright Office under Registration Number PAu 4-231-303, with an effective date of registration of June 28, 2024. The Certificate of Registration identifies Josh Webber as the author of the entire motion picture and Webber Films as the copyright claimant by written agreement. A true and correct copy of the Certificate of Registration is attached hereto as Exhibit A and incorporated herein by reference.

10. Pursuant to 17 U.S.C. § 410(c), the Certificate of Registration constitutes prima facie evidence of the validity of the copyright and of the facts stated therein. Plaintiff owns all right, title, and interest in and to the copyright in the Work, and has never assigned or transferred ownership of that copyright to Defendant or to any other person or entity.

**B. The GVN Term Sheet and GVN's Non-Performance**

11. On or about June 26, 2024, Plaintiff and non-party GVN Releasing LLC ("GVN") entered into a Distribution Licensing Term Sheet (the "Term Sheet") contemplating that GVN would serve as distributor of the Work. The Term Sheet contemplated, among other things, a theatrical release of the Work, a print-and-advertising commitment of one million dollars ($1,000,000), and a commitment to a release on approximately five hundred (500) screens. The Term Sheet expressly contemplated the execution of a long-form agreement. No long-form agreement was ever drafted, negotiated, or executed.

12. GVN repeatedly failed to perform its material obligations under the Term Sheet. Among other failures, GVN failed to effectuate the contemplated theatrical

release on multiple successive target dates, including in or about October 2024, February 2025, April 2025, and August 2025, and failed to fund or commit the contemplated print-and-advertising expenditure.

13. By reason of the expiration of the Term Sheet by its own terms and GVN's failures of performance, any rights held by GVN in the Work lapsed and reverted to Plaintiff no later than the spring of 2025, and in all events were formally and mutually terminated as alleged below.

**C.  The GVN–Iris Indie Sales Agency Arrangement**

14. On or about December 16, 2024, GVN and Defendant entered into an international sales agency agreement concerning the Work (the "Sales Agency Agreement"). Plaintiff was not a party to the Sales Agency Agreement, did not sign it, and did not authorize it.

15. On information and belief, the Sales Agency Agreement provided that all distribution agreements for the Work were to be entered into directly between GVN and the applicable foreign distributor, and not by or through any third party, and did not authorize Defendant to itself grant, license, or convey distribution rights in the Work to any third party. On information and belief, GVN never specifically authorized Defendant to license or convey distribution rights in the Work for the German-speaking territories.

16. In or about late 2023, prior to any involvement by GVN, principals of Defendant had solicited Plaintiff directly regarding representation of the Work, and Plaintiff declined to enter into any agreement with Defendant. At no time did Plaintiff enter into any written or oral agreement with Defendant concerning the Work.

**D.  Defendant's Unauthorized German Sub-License**

17. On or about June 10, 2025, without Plaintiff's knowledge, consent, or authorization, Defendant purported to enter into an agreement on IFTA terms with

Spirit Media GmbH ("Spirit Media"), a German distributor, purporting to grant Spirit Media distribution rights in the Work for German-speaking Europe (Germany, Austria, and Switzerland) (the "Purported German License").

18. Defendant concealed the material terms of the Purported German License from Plaintiff. Defendant's principals represented to Plaintiff that the German transaction was worth approximately twenty thousand dollars ($20,000). On information and belief, the actual consideration comprised a deposit of approximately twenty thousand dollars ($20,000) plus recurring payments of approximately fifteen thousand dollars ($15,000) per month over approximately two years. Despite repeated demands, Defendant has never produced the Purported German License or any chain-of-title documentation to Plaintiff.

19. On or about July 4, 2025, Plaintiff instructed Defendant and GVN in writing that any German release of the Work was to be held back until after the Work's United States domestic release. Defendant, through Rimassa, acknowledged the holdback and represented that the German distributor was, in words or substance, "fully aware of the holdback."

**E.  Termination, Reversion of All Rights, and the Unauthorized Press Release**

20. On or about August 28, 2025, Plaintiff and GVN entered into a Mutual Discharge and Termination Agreement (the "Termination Agreement"), which was fully executed via DocuSign on or about September 8, 2025. A true and correct copy of the Termination Agreement is attached hereto as Exhibit B and incorporated herein by reference.

21. The Termination Agreement terminated the Term Sheet, confirmed the reversion to Plaintiff of all rights in the Work, required GVN to cease all pitches, sales, marketing, and other representation of the Work, and, in Clause E thereof, required GVN to terminate the Sales Agency Agreement with Defendant within thirty (30) days and to provide proof of such termination to Plaintiff. Defendant was

made aware of the Termination Agreement and of the reversion of all rights to Plaintiff no later than September 2, 2025.

22. Separately, in or about May 2025, Defendant caused or permitted the dissemination of a press release concerning the Work, without Plaintiff's authorization or approval, which contained materially false credits, including a false identification of the Work's director, false cast information, false producer credits, and a false identification of the production company. The unauthorized press release was widely disseminated during the Cannes film market and caused injury to Plaintiff's professional reputation and business relationships.

**F.  The September 2, 2025 Agreement to Cancel and Defendant's 48-Hour Reversal**

23.  On September 2, 2025, GVN notified Rimassa that GVN and Plaintiff had mutually agreed to terminate their arrangement. Rimassa initially responded that Defendant, in words or substance, could not terminate because doing so would cause irreparable harm to the German distributor and to Defendant.

24.  Later on September 2, 2025, Josh Webber, on behalf of Plaintiff, spoke with Rimassa by telephone. During that call, Rimassa, on behalf of Defendant, agreed to cancel the German transaction. Immediately following the call, Mr. Webber confirmed the agreement in writing, thanking Rimassa for, in words or substance, her "agreement to cancel the germany deal." Rimassa responded in writing the same day, stating that she would be sending Plaintiff and GVN a "proper Settlement and Release Agreement over the next couple of days to make it official."

25.  In reasonable reliance on Defendant's agreement to cancel the German transaction, Plaintiff, among other things, refrained from immediately commencing legal proceedings against Defendant, proceeded to consummate a worldwide rights transaction premised on the availability of unencumbered worldwide rights as

alleged below, and continued to perform its obligations under the Termination Agreement.

26. On September 3, 2025, Rimassa wrote to Spirit Media stating, in words or substance, that Defendant had severed its relationship with the producers of the Work, and offering Spirit Media either a replacement motion picture or a full refund of its deposit.

27. On September 4, 2025 — within forty-eight hours of Defendant's agreement with Plaintiff to cancel the German transaction — Rimassa reversed course. Rimassa wrote to Spirit Media stating, in words or substance, that Spirit Media had *"the legal right to distribute this picture in German-speaking Europe which was entered into in good faith,"* and that she would *"take care of the situation between the domestic distributor and producer/director from my end that will not affect you."* Defendant concealed this reversal from Plaintiff.

28. Defendant never sent the promised Settlement and Release Agreement. On or about September 30, 2025, Mr. Webber wrote to Rimassa asking whether the German transaction had been cancelled. Defendant did not respond.

**G. Defendant's Continued Domestic Exploitation of the Work**

29. Following the reversion of all rights to Plaintiff, Defendant continued, within the United States, to reproduce, host, display, and disseminate the Work's promotional materials — including key art, trailers, teasers, stills, loglines, synopses, and advertising copy embodying and derived from the Work — on channels owned or controlled by Defendant, and continued to hold itself out as a licensor of rights in the Work.

30. On or about October 23, 2025, Plaintiff served on Defendant a written demand for the immediate removal of all such promotional materials from all Defendant-controlled channels. On information and belief, Defendant failed to timely and fully comply.

31.  On information and belief, Defendant, from within the United States, also reproduced and transmitted to Spirit Media delivery materials embodying the Work, and issued to Spirit Media the authorizations and assurances upon which Spirit Media purported to rely, thereby making possible Spirit Media's exploitation of the Work.

**H.  The Unauthorized German Release**

32.  On October 21 and 22, 2025, Plaintiff served written cease-and-desist notices on Spirit Media and on its physical distributor, Plaion Pictures GmbH ("Plaion"), invoking 17 U.S.C. § 501 and §§ 97–101 of the German Copyright Act (Urheberrechtsgesetz). On October 23, 2025, Spirit Media confirmed in writing that it had suspended all distribution, marketing, and sales activity for the Work.

33.  Notwithstanding the foregoing, and in reliance on Defendant's September 4, 2025 assurances, the Work was commercially released in Germany on or about November 24, 2025, on DVD and Blu-ray and on multiple digital platforms, including Apple TV, Amazon Prime Video, Maxdome, Videobuster, and Magenta TV, and was listed for sale and pre-order on Amazon.de. True and correct copies of representative screenshots of the German platform listings and product pages are attached hereto as Exhibit D and incorporated herein by reference. Neither Plaintiff nor anyone authorized by Plaintiff licensed or consented to any such release. On information and belief, Defendant has received, or claims the right to receive, commissions, fees, or other compensation from the exploitation of the Work.

**I.  The $500,000 Injury to Plaintiff's Worldwide Rights Transaction**

34.  On or about August 27, 2025, Plaintiff entered into a worldwide all-rights purchase term sheet with Global Genesis Group, LLC ("Global Genesis"), providing for a flat purchase price of one million five hundred thousand dollars ($1,500,000) for all worldwide rights in the Work in perpetuity (the "Global Genesis Agreement"). The Global Genesis Agreement was fully executed via DocuSign on

or about September 10, 2025. A true and correct copy of the Global Genesis Agreement is attached hereto as Exhibit C and incorporated herein by reference.

35. At the time Defendant agreed on September 2, 2025 to cancel the German transaction, Defendant knew that Plaintiff required the return and availability of unencumbered worldwide rights in the Work, and knew or was substantially certain that continued German exploitation would disrupt Plaintiff's worldwide rights dealings.

36. Upon learning of the unauthorized German release in late November 2025, Global Genesis's buyer initially demanded cancellation of the entire transaction. On or about December 3, 2025, Global Genesis confirmed in writing that the transaction would proceed only at a reduced purchase price of one million dollars ($1,000,000), excluding German-speaking Europe — a direct, documented reduction of five hundred thousand dollars ($500,000) proximately caused by the unauthorized German exploitation of the Work.

## J. Plaintiff's Demand and Defendant's Silence

37. In March 2026, Plaintiff, through counsel, served on Defendant, through its counsel of record, a formal written demand letter setting forth the foregoing facts, demanding cessation, an accounting, document production, and compensation, and giving notice of Defendant's obligation to preserve evidence. Defendant did not respond.

**FIRST CLAIM FOR RELIEF**

**(Copyright Infringement — 17 U.S.C. § 501 — Against All Defendants)**

38. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

39. Plaintiff is the owner of a valid, registered copyright in the Work, Registration Number PAu 4-231-303.

10
COMPLAINT

40. Without Plaintiff's authorization, and after all rights in the Work had reverted to Plaintiff, Defendant reproduced, distributed, publicly displayed, and transmitted the Work and materials embodying and derived from the Work within the United States, including by continuing to reproduce, host, and display the Work's promotional materials on Defendant-controlled channels, by reproducing and transmitting delivery materials embodying the Work to Spirit Media, and by continuing to hold itself out as an authorized licensor of the Work.

41. Defendant's conduct violated Plaintiff's exclusive rights under 17 U.S.C. § 106, including the exclusive rights of reproduction, distribution, and public display, and constitutes infringement under 17 U.S.C. § 501.

42. Defendant's infringement was willful within the meaning of 17 U.S.C. § 504(c)(2). Defendant knew that all rights had reverted to Plaintiff, agreed on September 2, 2025 to cancel the German transaction, reversed itself within forty-eight hours while concealing the reversal from Plaintiff, and continued its conduct after written demand.

43. As a direct and proximate result of Defendant's infringement, Plaintiff has suffered and continues to suffer damages, including actual damages of not less than five hundred thousand dollars ($500,000), and Defendant has obtained profits attributable to the infringement. Plaintiff is entitled to recover its actual damages and Defendant's profits pursuant to 17 U.S.C. § 504(b), or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c), enhanced for willfulness, together with attorneys' fees and costs pursuant to 17 U.S.C. § 505.

44. Defendant's conduct has caused and, unless enjoined, will continue to cause irreparable injury to Plaintiff for which Plaintiff has no adequate remedy at law. Plaintiff is entitled to injunctive relief pursuant to 17 U.S.C. § 502 and to impoundment and disposition of infringing materials pursuant to 17 U.S.C. § 503.

## SECOND CLAIM FOR RELIEF

### (Contributory Copyright Infringement — Against All Defendants)

45.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

46. Spirit Media, Plaion, and their retail and platform partners directly infringed Plaintiff's exclusive rights in the Work by reproducing, distributing, selling, and publicly performing and displaying the Work without Plaintiff's authorization.

47.  Defendant, with actual knowledge that Plaintiff owned the Work, that all rights had reverted to Plaintiff, and that Plaintiff had not authorized any German exploitation, intentionally induced, caused, and materially contributed to that direct infringement, including by acts undertaken within the United States: reproducing and transmitting delivery materials embodying the Work to Spirit Media; issuing the September 4, 2025 assurance that Spirit Media had "the legal right to distribute" the Work; representing that Defendant would "take care of" the producer and director; and thereafter failing to correct or withdraw those assurances after written demand.

48.  Defendant's contributory infringement was willful. As a direct and proximate result, Plaintiff has suffered damages as alleged above, and is entitled to the remedies provided by 17 U.S.C. §§ 502–505.

## THIRD CLAIM FOR RELIEF

### (Breach of Oral Contract — Against All Defendants)

49.  Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

50. On September 2, 2025, Plaintiff and Defendant entered into an oral agreement whereby Defendant agreed to cancel the German transaction and to formalize that cancellation in a written settlement and release agreement, and Plaintiff agreed, among other things, to forbear from immediately pursuing legal

remedies against Defendant and to resolve the parties' dispute consensually. The agreement was confirmed in writing by both parties the same day.

51. Plaintiff performed all conditions, covenants, and promises required of it under the agreement, except as excused by Defendant's conduct.

52. Defendant breached the agreement by, among other things, failing to cancel the German transaction; instructing Spirit Media on September 4, 2025 to proceed; failing to deliver the promised settlement and release agreement; and concealing its reversal from Plaintiff.

53. As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages in an amount to be proven at trial, but not less than five hundred thousand dollars ($500,000).

## FOURTH CLAIM FOR RELIEF

### (Promissory Estoppel, in the Alternative — Against All Defendants)

54. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

55. Defendant, through Rimassa, made a clear and unambiguous promise to Plaintiff on September 2, 2025 that Defendant would cancel the German transaction and formalize the cancellation in writing.

56. Defendant made the promise with the reasonable expectation that Plaintiff would rely on it. Plaintiff did reasonably and foreseeably rely on the promise, including by forbearing from immediate legal action against Defendant, by proceeding to close the Global Genesis Agreement premised on the availability of worldwide rights, and by continuing performance under the Termination Agreement.

57. Plaintiff's reliance was to its substantial detriment, and injustice can be avoided only by enforcement of the promise. Plaintiff is entitled to damages in an amount to be proven at trial, but not less than five hundred thousand dollars ($500,000).

13
COMPLAINT

**FIFTH CLAIM FOR RELIEF**

**(Intentional Interference with Contractual Relations — Against All Defendants)**

58. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

59. A valid and enforceable contract existed between Plaintiff and Global Genesis — the Global Genesis Agreement, executed September 10, 2025 — for the purchase of worldwide rights in the Work for one million five hundred thousand dollars ($1,500,000).

60. Defendant knew of Plaintiff's worldwide rights dealings and of the Global Genesis Agreement, or knew facts making the existence of such a worldwide transaction substantially certain, including through the September 2025 communications in which Plaintiff explained that all rights had reverted and that the German transaction had to be cancelled.

61. Defendant committed intentional acts designed to induce a breach or disruption of the contractual relationship, including by instructing and assuring Spirit Media on September 4, 2025 that it could proceed with German distribution, by concealing that instruction from Plaintiff, and by failing to withdraw its assurances after demand — conduct that was independently wrongful as copyright infringement and fraud.

62. Defendant's conduct caused an actual disruption of the contractual relationship: upon the unauthorized German release, Global Genesis's buyer demanded cancellation, and the transaction was preserved only at a purchase price reduced by five hundred thousand dollars ($500,000).

63. As a direct and proximate result, Plaintiff has been damaged in an amount to be proven at trial, but not less than five hundred thousand dollars ($500,000). Defendant's conduct was undertaken with malice, oppression, and fraud within the

meaning of California Civil Code § 3294, entitling Plaintiff to punitive and exemplary damages.

## SIXTH CLAIM FOR RELIEF

## (Fraud — Intentional Misrepresentation and Promissory Fraud — Against All Defendants)

64. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

65. On September 2, 2025, during a telephone call and in confirming email correspondence, Rimassa, acting on behalf of Defendant, represented to Josh Webber, acting on behalf of Plaintiff, that Defendant would cancel the German transaction, and further represented in writing that Defendant would deliver a "proper Settlement and Release Agreement over the next couple of days to make it official."

66. The representations were false when made, and Defendant made them without any intention of performing. The falsity of the representations and the absence of any intention to perform are evidenced by, among other things, Defendant's written instruction to Spirit Media on September 4, 2025 — within forty-eight hours — that Spirit Media had "the legal right to distribute" the Work and that Defendant would "take care of" the producer and director; Defendant's failure ever to deliver the promised settlement agreement; and Defendant's failure to respond to Plaintiff's September 30, 2025 inquiry.

67. Defendant made the representations with the intent to induce Plaintiff's reliance — specifically, to forestall legal action by Plaintiff, to preserve Defendant's commissions and fees from the German transaction, and to buy time for the German release to proceed.

68. Plaintiff justifiably relied on the representations by forbearing from immediate legal action, by closing the Global Genesis Agreement premised on

unencumbered worldwide rights, and by refraining from directly notifying Spirit Media and its distribution partners of the rights reversion in the critical September–October 2025 window.

69. As a direct and proximate result of Defendant's fraud, Plaintiff has been damaged in an amount to be proven at trial, but not less than five hundred thousand dollars ($500,000). Defendant's conduct was intentional, malicious, oppressive, and fraudulent within the meaning of California Civil Code § 3294, entitling Plaintiff to punitive and exemplary damages in an amount sufficient to punish and deter.

## SEVENTH CLAIM FOR RELIEF

### (Declaratory Relief — 28 U.S.C. §§ 2201, 2202 — Against All Defendants)

70. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

71. An actual and justiciable controversy exists between Plaintiff and Defendant concerning the ownership of, and rights in, the Work. Plaintiff contends, and Defendant disputes, that Defendant holds no right, title, or interest in the Work; that any authority Defendant ever claimed under the Sales Agency Agreement lapsed and was terminated; and that the Purported German License is void and conveyed no rights.

72. Plaintiff is entitled to a judicial declaration that Plaintiff is the sole owner of all right, title, and interest in and to the copyright in the Work; that Defendant holds no rights in the Work; and that the Purported German License is void and of no effect as against Plaintiff.

## EIGHTH CLAIM FOR RELIEF

### (Accounting — Against All Defendants)

73. Plaintiff incorporates by reference each and every allegation set forth in the preceding paragraphs as though fully set forth herein.

74. Defendant has received, and on information and belief continues to receive, monies from the unauthorized licensing and exploitation of the Work, including deposits, recurring payments, commissions, and fees arising from the Purported German License, in amounts unknown to Plaintiff and which cannot be ascertained without an accounting. The amounts owed to Plaintiff can only be determined by an accounting of Defendant's books and records.

75. Plaintiff is entitled to an accounting of all revenues, payments, commissions, and other consideration received by or owed to Defendant in connection with the Work, and to a constructive trust upon, and disgorgement of, all such sums.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Webber Films LLC prays for judgment against Defendant, and each of the DOE defendants, as follows:

1. For a permanent injunction pursuant to 17 U.S.C. § 502 restraining Defendant, its officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with any of them, from reproducing, distributing, displaying, licensing, marketing, or otherwise exploiting the Work or any materials derived therefrom, and from representing to any person that Defendant holds any rights in the Work;

2. For impoundment and disposition of all infringing materials pursuant to 17 U.S.C. § 503;

3. For Plaintiff's actual damages and Defendant's profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), or, at Plaintiff's election, statutory damages pursuant to 17 U.S.C. § 504(c), enhanced to the maximum extent for willful infringement;

4. For compensatory damages on the Third through Sixth Claims for Relief in an amount to be proven at trial, but not less than five hundred thousand dollars ($500,000);

5. For punitive and exemplary damages on the Fifth and Sixth Claims for Relief pursuant to California Civil Code § 3294;

6. For a judicial declaration as set forth in the Seventh Claim for Relief;

7. For an accounting, the imposition of a constructive trust, and disgorgement of all sums received by Defendant in connection with the Work;

8. For Plaintiff's reasonable attorneys' fees and full costs pursuant to 17 U.S.C. § 505 and as otherwise permitted by law;

9. For prejudgment and post-judgment interest at the maximum lawful rate; and

10. For such other and further relief as the Court deems just and proper.

DATED:  July 15, 2026                        Respectfully submitted,
                                             MUSAEV & ASSOCIATES, PC

                                             By: _____
                                             Magomed Esendirov, Esq.
                                             Attorneys for Plaintiff
                                             WEBBER FILMS LLC

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and Local Rule 38-1, Plaintiff Webber Films LLC hereby demands a trial by jury of all issues so triable.

DATED:  July 15, 2026                        Respectfully submitted,
                                             MUSAEV & ASSOCIATES, PC

                                             By: _____
                                             Magomed Esendirov, Esq.
                                             Attorneys for Plaintiff
                                             WEBBER FILMS LLC

18
COMPLAINT

# INDEX OF EXHIBITS

*Webber Films LLC v. Iris Indie International, LLC — Complaint*

| Exhibit | Description | PDF Page |
|---|---|---|
| **A** | Certificate of Copyright Registration No. PAu 4-231-303 for the motion picture LOVE ME DEAD | 20 |
| **B** | Mutual Discharge and Termination Agreement between Webber Films LLC and GVN Releasing, LLC (fully executed September 8, 2025) | 22 |
| **C** | LOVE ME DEAD Worldwide Purchase Term Sheet between Webber Films LLC and Global Genesis Group, LLC (fully executed September 10, 2025) | 27 |
| **D** | Screenshots of German sales platform listings and product pages for the Work | 30 |